Case number 14-3237. Jose Ventura Reyes v. Eric Holder Jr. Fifteen minutes per side. Mr. Lorenson, the petitioner. Good morning, your honors. May it please the court, my name is attorney Jason Lorenson and I represent the petitioner, Mr. Jose Ventura Reyes. I would like to reserve three minutes for rebuttal at the end of my argument. Thank you, your honor. Justice Brandeis once said that to deport a person is to take away all that is good from them. The U.S. laws have recognized that there's degrading human treatment across the world, but yet no matter what a person has done here in the United States that they can still find the protection of the United States laws. There's no doubts that, no contradictory information, nobody's disputing the fact that due to Mr. Ventura Reyes' conviction of a controlled substance violation that his only form of relief is deferral of removal under the United Nations Convention Against Torture. I have a practical question. Is he in custody now? He is not in custody, your honor. If he were granted this deferral, so you don't expect that he would be in or remain in custody if the deferral were granted? Correct, your honor. And he would have the protection of the laws of the United States so that he wouldn't have to return to his home country and face potential torture there. Thank you. And we're asking this court to remand the case back so that the evidence in the record can be fully considered pursuant to the case law and I'll get through, I'll discuss that in a minute. But there's three central issues to the petitioner's argument. Did the petitioner receive a full and fair hearing or was he denied due process of law when the corroborating evidence provided by his uncle, Felipe Reyes, was not considered credible? Did that credibility finding actually taint his claim in prejudice, Mr. Ventura's claim for protection under the laws? Second, did the admission of evidence by the court, the court did not permit to have CCDDEE and I believe FF, which had specific evidence, specific threats towards Mr. Ventura, did that prejudice Mr. Ventura's case so they could not receive a full and fair hearing afforded to him under the Fifth Amendment? The third issue is in consideration of all the evidence which the immigration court, and I refer to that as a trial court, must do under statutory and case law, must consider all evidence and under the totality of circumstances, Mr. Reyes Ventura would have met his burden of proof and been afforded that form of relief. And by the way, that is his only form of relief due to his criminal conviction. The facts of the case are two-fold and very complicated. The first one was dealing with a politically motivated killing which Mr. Ventura Reyes was implicated back in 1989 and which forced his ultimate leaving. There's evidence in the record from his dad how he paid for a boat to take him from the Dominican Republic to Puerto Rico and eventually he made it to the mainland of the United States. There's one point of clarification in the record. There is a connection with the Pagaro, Julian Pagaro, who was the person who was killed. He has connections, and it's in the record, with a Vincente Sanchez Barrett. In the record and in the documentary evidence, and I'd ask the court to take judicial notice of this, it's also he's known as Vincente Sanchez Barrett. I know it's a minor distinction, but there is a lot of information on this person. But he is a very powerful politician in the Dominican Republic. Petitioner hid in the hills for several months before escaping the Dominican Republic. And up until the mid-2000s, 2012, 2013, people were still in the Dominican Republic looking for him. And the second claim is very convoluted, dealing with a framing of a person, a sting operation that Mr. Ventura Reyes was involved in on the periphery, and which involved several extrajudicial killings in the Dominican Republic, which the record does include many death certificates and many different articles on that issue. Before we go further in the facts, I have a jurisdictional question. It appears that you concede that our jurisdiction is restricted to questions of law and constitutional claims. Do you concede that? Yes, Your Honor. Then how do we reach the substantial evidence standard that you argue about? And that's something I do want to clarify, Your Honor. The standard of review is actually de novo, as this Court knows, under Ahmed v. Gonzalez, which this Court decided in 2005. So you have to review the entire record. But the bigger issue in this case, I think, is that there's evidence that was precluded from the entire record. There's evidence that wasn't considered, and underneath the case law, under a matter of JYC, a BIA decision under a matter of, I believe it's Mo, one second, Your Honor, I'm sorry, Mostafa, which this Court decided in 2005, the trial court must consider all evidence, all evidence that's presented of country conditions. Unfortunately, I don't think we can get to that question because the trial court, and that's where the due process violation comes in, did not consider that. So Mr. Ventura-Reyes was precluded from a full and fair hearing because that evidence wasn't considered. And I'm referring to the evidence that was excluded. I think there's a lot of evidence on the record that wasn't considered when you review, especially the country reports. There's evidence from the Department of State report saying that, yes, there's proof of extrajudicial killings. There is corruption with high-level government officials that have not been prosecuted. And I think that's the bigger issue here, Your Honor. Is the refusal to accept a document after the record has closed, help me understand how that qualifies as a due process argument. They are, under federal case, under the Supreme Court case law, as this Court is aware of, the alien is to be afforded a full and fair hearing. The regulations themselves, although the record was closed after the first hearing, at the end of the first hearing, Your Honor, regulations... Without objection. I believe that was objected to, Your Honor. The closure of the record was objected to at the hearing? Perhaps I misunderstood. I thought there was a subsequent request just to place them in the record, but nothing at the hearing about closing the record. Correct, Your Honor. That is correct. Now, thinking back on the record, Your Honor, yes, there was no objection at that point. And the thought at that process was to do a motion to accept additional evidence, if that was to come forward. And it did come forward. And in reviewing the statutory law, yes, the statutory regulations, H.C.F.R. 1003.31c actually does not permit the trial court to close the hearing. It does permit the immigration judge to issue, at a master calendar hearing, a call-up date to say all documents are due before a certain date. Is it .31c that expressly says you may not? I believe so, Your Honor. You may not close the record? It does not say that, but it does say... I thought it was a grant of discretionary authority to the IJ to set time limits for submissions. And I guess the solution to that issue, that's where the problem, I think, manifests itself. According to the ER regulations, if the record is closed at a certain point, you can do a motion to accept light filing. But after we researched the regulations, it seems that if the record is closed, the only way of doing that is to do a motion to reopen procedurally. And that can't be done until there's a final order of removal, which there isn't if a case is exigent. And then the BIA did not consider that in their own decision, Your Honor. So, again, it goes back to the trial court. Should they have considered that evidence? And underneath the case law, I guess, again, under Mustafa, this court has said that the trial court must consider, I'm sorry, it flanks the regulations, shall consider all evidence, especially with regards to specific threats, Your Honor, involving the petitioner. Under your argument, could that be submitted at any date and there's a due process requirement to reopen the record? I'm struggling with understanding how due process fits within the normal adjudicatory role that's granted to the IJ. Normally in a detained case, Your Honor, just to give you a background, maybe that will help the court in this struggle. In a detained case, the record is not normally closed until all testimony is completed, which would make sense in terms of, and part of the... Was all testimony completed here? No, not when the record was closed, Your Honor. It wasn't. That was after the first day. There was, I believe, seven days of hearings. I could be wrong on that. And spread over four months. If I recall, the first hearing was sometime in June of 2013. There was two hearings in June of 2013. I believe two hearings in August and one hearing in September for the oral decision. I believe the last date was sometime at the end of August. And you filed your motion to extend in August? It was in August, Your Honor, when I received... Before? Yes. While they were still receiving evidence?  And I know I only have about 30 seconds left, Your Honor. However, again, underneath the case law, I can't reiterate enough, under the Board's own case law, especially, again, in the public policy issue, that we're protecting people from potential harm. And there was specific evidence that was not considered at the trial court level, which I think is very pertinent to the petitioner's claim, Your Honor. And my time is up, Your Honor. Yes, you can say you have your reserved time.  Thank you, Your Honor. May it please the Court. My name is Victor Lawrence, and I represent the Attorney General. This Court should dismiss this petition for review for lack of jurisdiction pursuant to the statutory bar found at USC 1252A2C as a result of petitioner's undisputed criminal background as an aggravated felon and someone who was convicted of a controlled substance offense. As Petitioner's Counsel conceded, his only avenue to invoke this Court's jurisdiction at this point is if he has a legitimate constitutional claim or a legal issue, which falls within the exception of 8 U.S.C. 1252A2D. But it's Respondent's position that Petitioner presents no colorable constitutional claim or legal issue. And I can go through the three issues that Petitioner has raised and explain why none of these are actual legal issues or constitutional claims. And I think I'll start with the second one,  the failure to allow certain documents to be entered after the record was seemingly closed. The issue of whether... So you dispute his allegation that they were submitted while the record was still, at least while the agency was still receiving information before it was formally closed. Okay, well, I could say this much. On page 449 of the record and 450, Petitioner was already giving his closing arguments. I believe it's after that time that he's decided to submit additional records. That was my quick review during the questioning, so please excuse me if I'm mistaken. But in any event, I think it's a distinction without a difference because the decision of an immigration judge of whether or not to admit evidence, whether or not he had the opportunity or the ability to, whether the record was closed or not, is not a constitutional question or a legal error. It's a discretionary question. And this Court has precedent exactly on point, which is Amir v. Gonzales, and that was briefed in our Respondent's Brief, that exactly this decision of whether or not to admit evidence is not a constitutional question or one that involves a legal error. I think the Court can rely on that in this case to dispose of that claim. And I would mention in any respect that even if the Court were to look at that evidence, which is in the record, it's three articles, and they're found in the record at page 475, 478, and 481. Those are the English versions of these articles. You'll see two things. Number one, that they're not specific threats to the Petitioner, so there's no prejudice by not having those in the record. And number two, one of them I don't think even mentions the Petitioner's name, so I can't imagine how that could have been anything to help the Petitioner. But these three articles we would suggest or assert are merely cumulative evidence of everything that Petitioner already offered, and offered nothing specific or unique that adds to the body of evidence that would have assisted Petitioner in his claim that he deserved protection under the Convention Against Torture. So number one, failing to admit that evidence was not a constitutional question or a question of law, so you don't even reach this issue. But should you reach that issue, there's certainly no prejudice as a result of not allowing those articles to be in the record. So that's one of Petitioner's claims. The other one he mentioned first was this idea that the credibility determination of the Petitioner's uncle was not in some way giving the Petitioner a full and fair hearing. But once again, what we're looking at here is a credibility determination, which is a weighing of the evidence. Is Petitioner's uncle credible or not credible? And this Court has held pretty clearly, I think, in the Etienne case, which is also cited in our brief, that this idea of weighing evidence is not something that's a constitutional claim or a legal error. Therefore, Petitioner's attempt to suggest that this is a legal error is not a colorable constitutional claim or legal error. It's simply a dispute over the weighing of the evidence, which is something that this Court doesn't get to under the jurisdictional bar. Isn't there case law that suggests that the jurisdictional bar, while it might apply to withholding of removal, does not necessarily apply to deferral of removal? I'm not sure what case Your Honor may be referring to. I'm thinking of a Ninth Circuit case, Lemus v. Lemus-Galvan. The distinction being that withholding of removal is a categorical bar. If you have the conviction, you are barred, period. But deferral of removal has to do with an evaluation of the factual setting as to whether, even though you may have a conviction of that crime, you will not be sent back to sure torture or sure death, because that's the nature of our immigration law and the protections in America. Why would you not have a constitutional claim or a fact-based claim in the latter, in the deferral of removal categorization? Respectfully, two things. First of all, I think Your Honor knows this already, but I'll just say it anyway, that the petitioner didn't raise this issue regarding the Ninth Circuit case in his brief, so I think it's waived. The jurisdiction is ours. We have to decide it. I understand. But Your Honor, respectfully, we disagree with that Ninth Circuit decision. I think that I don't understand why it should be any different as far as why the bar should not apply to claims under Convention Against Torture simply because I guess I'm failing to understand the rationale of the Ninth Circuit. I think the distinction is in withholding of removal, it is a statutory bar. If you have the conviction, you are barred, period, done. But in deferral of removal, what is said is no matter what situation you find yourself in, person here in America, even if you are convicted, there is another opportunity you have to show that you are in danger of sure torture if you are returned to that location. And based on that proof, we will grant you deferral of removal. That to me is a distinction from a categorical bar. And you're referring to the categorical bar? And the categorical bar would say, hmm, we're not going to look at the facts because we don't care about the facts. We'll give you constitutional arguments and we'll give you arguments at law. That's the only jurisdiction. But when you are in deferral of removal, you're in the fact world. That's the whole basis of the determination of whether you are going to be granted deferral of removal. So it seems to me that the bar that would prevent any factual determination in withholding of removal doesn't logically apply to an analysis of a deferral of removal case. I do understand Your Honor's distinction, but I think the bar at 1252A2C is pretty clear that it was Congress's intent that if someone is an aggravated felon or convicted of a controlled substance offense, that that applies. And I don't see anything within the language of 1252A2C that says it applies in withholding of removal but not in deferral of removal. So I think respectfully, I think the Ninth Circuit's opinion goes beyond what the Congress's intent was in outlining that bar at 1252A2C. I would also say that notwithstanding the Court's ability to go into jurisdiction, that Petitioner conceded that the bar applies with respect to this entire claim. He also conceded that the only way that this Court could invoke jurisdiction was through the exception at 1252A2D by asserting a constitutional claim or a legal issue. And it's your position that he doesn't either, that he does not assert a constitutional claim, and that his argument about how you have to examine the facts in order to satisfy the legal standard is inaccurate? That is correct because you don't even get that far. He hasn't asserted a colorable constitutional claim under this Court's precedent. Each of the three areas that he suggested are barred by prior precedent of this Court. For instance, again, on the failure to admit documents, the Court in the Amir case clearly said that that was not something that is a constitutional issue or a legal claim. The idea of the IJ's credibility determination, this Court precluded in the Etienne case by saying that that is akin to quibbling over the evidence, weighing over the evidence issue, and that also is not a colorable constitutional claim or a legal claim. And finally, the last thing, which I think was in Petitioner's brief, I'm not sure how much he hit upon it or had a chance to hit upon it in his argument, was this idea that the immigration judge did not apply the correct standard for protection under the Convention Against Torture. And here again, the record is clear that the immigration judge applied the correct standard, but what Petitioner is quibbling about is the weighing of the evidence and how the immigration judge determined that Petitioner did not meet the standard for protection against torture. So all three claims that Petitioner has raised, I agree, Your Honor, we would suggest, the government would suggest, are not legitimate constitutional claims or legal issues that would allow the Court to get around the bar 1252A2C and find jurisdiction under 1252A2D. And therefore, it's for that reason that the government respectfully requests that this Court affirm the decision below and dismiss this case for lack of jurisdiction. Further questions? Thank you very much. Thank you, Your Honor. Just this issue of jurisdiction, Your Honors, under Castellano-Chacon v. INS, which was decided by this Court, I believe, in 2003, the immigration judge is to guarantee a full and fair hearing to an alien and must not prevent the introduction of significant evidence into the record. That was decided in 2003. Please respond to your opposing counsel's argument as to why the three documents or four, perhaps, were not just cumulative evidence. Okay. One was actually, I think, one of the more important documents was a newspaper article concerning the Petitioner's daughter. And in that, it was a recent article from, I believe, 2013, which she states her life in the Dominican Republic, that these people were going around looking for her father. And there was a specific threat. There was a black car. There was guns. There was bullets. I mean, there was a lot of specific evidence demonstrating that there was a specific threat against the Petitioner. Was that article referenced a threat against the Petitioner or just firing of guns outside her home and that kind of thing? No, it's against the Petitioner. It's in there. And one of the things I found interesting in the government's petition, Your Honor, was the fact that Jose Ventura Reyes must repay a debt. That came through loud and clear from one of the people, one of the perpetrators, trying to find Mr. Ventura Reyes. And that was heard by the daughter's uncle as he was trying to protect her in the DR. Sorry, and that's in the article? That is in the article, Your Honor. The other evidence, yes. Again, it was corroborative evidence from an article and it lists all the players that were involved. But again, there was never any comparison to the death certificates that were originally submitted. And the other thing about the record, Your Honors, is it's not chronologically based. It will start with the decision, the administrative decision, go to the judge's decision, but it doesn't follow it. Because I even had a hard time in preparation for this morning trying to remember how things were filed. And it's sort of almost backwards. So those three articles were submitted well before the final hearing, and unfortunately my time is up here. Thank you. Thank you both for your arguments. Thank you.